IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Englert, Inc., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Civil Action No. 4:09-cv-00253-TLW |
| ) | |
| LeafGuard USA, Inc., Seamless Gutters ) | |
| of Socastee, Inc., Jerry Dan Vickory ) | |
| and Brenda Vickory, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

# ORDER

The plaintiff, Englert, Incorporated ("plaintiff"), initially filed this action in the Court of Common Pleas for Horry County, South Carolina on July 17, 2001. The Court of Common Pleas entered partial summary judgment in favor of the plaintiff. The South Carolina Court of Appeals affirmed this decision on August 8, 2005. Englert, Inc. v. LeafGuard USA, Inc., 619 S.E.2d 12 (Ct. App. 2005). However, the South Carolina Supreme Court reversed the Court of Appeals on March 24, 2008, finding that genuine issues of material fact precluded the entry of partial summary judgment. Englert, Inc. v. LeafGuard USA, Inc., 659 S.E.2d 496 (2008). On January 5, 2009, the plaintiff filed an amended complaint adding a cause of action for trademark infringement. Following the addition of this federal cause of action, the case was removed to this Court on January 30, 2009. (Doc. #1).

This action stems from a dispute surrounding an agreement for the distribution of LeafGuard "leaf rejecting" rain gutters. In 1993, Seamless Gutters of Socastee, Incorporated, a company owned by individual defendants Jerry Dan and Brenda Vickory, entered into an agreement with the plaintiff

which allowed Seamless Gutters of Socastee to sell and install LeafGuard gutters in a limited territory surrounding Myrtle Beach, South Carolina. The LeafGuard "leaf rejecting" gutter technology and trademarks are protected by patents and trademarks registered with the United States Patent and Trademark Office.[1] The agreement between the plaintiff and defendant Seamless Gutters of Socastee provided that Seamless Gutters would purchase a LeafGuard gutter-fabricating machine from the plaintiff for $26,000, and would comply with numerous conditions including the payment of royalties for each linear foot of LeafGuard gutters produced by the gutter-fabricating machine and certain reporting and minimum sales requirements. The agreement also contained a buy-back provision which provided that in the event the agreement was terminated, Seamless Gutters would sell the gutter-fabricating machine back to the plaintiff for the greater of either the depreciated value or one dollar. The parties renewed the agreement in 1998, however, LeafGuard USA, a second company owned by Jerry Dan and Brenda Vickory, was substituted into the agreement in place of Seamless Gutters of Socastee. In 2001, a dispute arose between the plaintiff and defendant LeafGuard USA involving royalty payments and minimum sales quotas. On March 15, 2001, the plaintiff notified LeafGuard USA that it was terminating the agreement, and requested that the defendants pay accrued royalties and return the gutter-fabricating machine – which apparently had fully depreciated at this point – in exchange for one dollar. When the defendants refused to comply, this suit was filed in state court. Evidence in the record indicates that the defendants have continued to use the LeafGuard gutter-fabricating machine without the payment of royalties during the eight years that this suit has been pending.

---

[1] The trademark and patents associated with the LeafGuard line of products are registered to LeafGuard Gutter Systems, Incorporated ("LGS"). Englert obtained the right to sell, market, and sublicense the LeafGuard line of products through a 1993 license agreement with LGS.

The defendants have filed numerous counterclaims, including a counterclaim for violation of the South Carolina Unfair Trade Practices Act. On April 23, 2009, the defendants filed a motion for partial summary judgment on this counterclaim. (Doc. #12). The plaintiff filed a response in opposition on May 11, 2009. (Doc. #13). The defendants filed a reply on May 21, 2009. (Doc. #15).

In addition, the plaintiff filed a motion for a preliminary injunction on June 19, 2009. (Doc. #22). The defendants filed a response in opposition on July 17, 2009. (Doc. #28). The plaintiff filed a reply on July 31, 2009. (Doc. #31). The Court held a hearing on both the motion for partial summary judgment and the motion for preliminary injunction on November 23, 2009. The Court has fully considered the motions, memoranda, and arguments of the parties, and these matters are now ready for disposition.

## I. DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Pursuant to Federal Rule of Civil Procedure 56(c), the defendants are entitled to summary judgment if the pleadings, responses to discovery, and the record reveal that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). As the party seeking summary judgment, the defendants bear the initial responsibility of informing this Court of the basis for its motion. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). This requires the defendants to identify those portions of the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of genuine issues of material fact. Celotex, 477 U.S. at 323; see also

Anderson, 477 U.S. at 249.

Though the defendants bear this initial responsibility, the plaintiff, as nonmoving party, must then produce "specific facts showing that there is a genuine issue for trial." Fed R. Civ. P. 56(e); see Celotex, 477 U.S. at 317. In satisfying this burden, the plaintiff must offer more than a mere "scintilla of evidence" that a genuine issue of material fact exists, Anderson, 477 U.S. at 252, or that there is "some metaphysical doubt" as to material facts. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Rather, the plaintiff must produce evidence on which a jury could reasonably find in its favor. See Anderson, 477 U.S. at 252.

In considering the defendants' motion for summary judgment, this Court construes all facts and reasonable inferences in the light most favorable to the plaintiff as nonmoving party. See Miltier v. Beorn, 869 F.2d 848 (4th Cir. 1990); Cole v. Cole, 633 F.2d 108 (4th Cir. 1980). Summary judgment is proper "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there [being] no genuine issue for trial." Matsushita, 475 U.S. at 587 (1986) (internal quotations omitted).

As a basis for summary judgment on its own counterclaim, the defendants assert that the agreement between the parties created a franchise relationship. The defendants further assert that the plaintiff failed to provide the defendants with a disclosure statement as required by the Federal Trade Commission ("FTC"). Under the FTC's "Franchise Rule," franchisors are required to "provide a prospective franchisee with a detailed disclosure statement prior to selling a franchise" which presents "certain pertinent facts about the franchisor's corporate history, its financial condition, the track record of other franchisees, and the background of its principal officers." Federal Trade Commission v. P.M.C.S., Inc., 21 F. Supp. 2d 187, 191 (S.D.N.Y. 1998) (citing U.S.

v. Building Inspector of America, Inc., 894 F. Supp. 507, 510 (D. Mass. 1995)). The defendants further assert that the failure to provide the FTC franchise disclosure statement under the "Franchise Rule" amounts to a *per se* violation of the South Carolina Unfair Trade Practices Act.

As an initial matter, the parties dispute whether the agreement between the plaintiff and the defendants was a franchise or a license agreement. The actual agreement between the parties is captioned as a license agreement, and the agreement has been described by both the South Carolina Court of Appeals and the South Carolina Supreme Court as a license agreement. However, as noted by the defendants, the FTC has issued an advisory opinion noting that "[w]hether a business relationship constitutes a 'franchise,' is not dependent upon what the parties call the relationship ... [r]ather, a relationship is covered by the Franchise Rule if it satisfies the definitional elements of a 'franchise' set forth in the Franchise Rule." FTC Informal Staff Advisory Op. 98-4 (1998). In determining whether a commercial relationship constitutes a franchise for purposes of the FTC rule, Courts have traditionally looked to see whether the relationship: 1) involves the distribution of goods or services associated with a franchisor's trademark or trade name; 2) whether the franchisor has authority to exert a significant degree of control over the franchisee's method of operation, or provide significant assistance in the franchisee's method of operation; and 3) whether the franchisor must pay at least $500 within six months after the franchise business begins. See 16 C.F.R. § 436.2(a)(1)(i)(A)(1), (a)(1)(i)(B)(1), (a)(1)(ii)(B)(2) (1993); 16 C.F.R. § 436.1(h)(1)-(3) (2009); FTC Informal Staff Advisory Op. 98-4 (1998); Federal Trade Commission v. P.M.C.S., Inc., 21 F. Supp. 2d 187, 191 (S.D.N.Y. 1998).

The first prong of the analysis does not appear to be in dispute, as the agreement in this case involves the sale or distribution of goods associated with the plaintiff's trademark. However, when

reviewing the record before the Court in the light most favorable to the plaintiff as non-moving party, the second and third elements of the analysis are problematic. When determining whether a business exerts significant control over its franchisee's method of operation under the second prong of the analysis, the FTC has noted that "in order to be deemed 'significant' the controls or assistance must be related to the franchisee's entire method of operation – not its method of selling a specific product or products which represent a small part of the franchisee's business." FTC Informal Staff Advisory Op. 98-4 (1998). Based on the record before this Court, including the express terms of the agreement between the parties, it is reasonable to conclude Englert exercised control over the defendants only in regard to a single product line. Further, based on the record, Englert did not have the ability to control any of the defendants' products or services other than LeafGuard gutters. It has not been disputed that the sale and installation of LeafGuard gutters was but one of multiple products and services provided by the defendants.

The defendants point to numerous terms from the agreement, including limitations on territory, limitations on the ability to sell the product through lumberyards and home centers, and accounting and sales reporting requirements, as evidence that the plaintiff exercised a great deal of control over the defendants' method of operation. However, it is readily apparent from the terms of the agreement that these limitations only restrict the defendants operations with respect to the LeafGuard product line. Thus, the record does not reflect that the level of control exerted by Englert over the defendants' method of operation was "significant" for purposes of the FTC Franchise Rule.

In addition, the record does not indicate that any franchise fee was paid to Englert by the defendants as required by the third prong of the analysis. Although the defendants paid Englert a sum of money at the inception of the business relationship, the record reflects that this payment was

6

made in exchange for the purchase of the gutter-fabricating machine. The record does not indicate that this payment was in the form of a franchise fee as required by the rule. Thus, the Court does not conclude that the agreement between the parties was a franchise rather than a license agreement as a matter of law. Therefore, for these reasons, the defendants are not entitled to partial summary judgment on their claim for a violation of the South Carolina Unfair Trade Practices Act.

As a final matter, the Court notes that the inquiry would not end even if the Court were to construe the business relationship between the parties as a franchise rather than a license. The defendants would still be required to establish that the failure to comply with the FTC "Franchise Rule" constitutes a *per se* violation of the South Carolina Unfair Trade Practices Act. The defendants have not provided persuasive authority to indicate that the South Carolina courts would construe a violation of the Franchise Rule as a violation of the South Carolina Unfair Trade Practices Act as a matter of law. For the foregoing reasons, the defendants' motion for partial summary judgment is denied.

## II. PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

The United States Supreme Court recently reiterated that "[a] plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. Natural Resources Defense Council, 129 S.Ct. 365, 374 (2008). See also Real Truth About Obama, Inc. v. FEC, 575 F.3d 342, 347 (4th Cir. 2009) (noting that the "balance-of-hardship test" found in Blackwelder Furniture Co. of Statesville v. Seilig Manufacturing Co., 550 F.2d 189 (4th Cir. 1977), may no longer be applied in the Fourth Circuit). The plaintiff has filed a motion for preliminary injunction seeking to enjoin the defendants

from using, selling, disposing, transferring, damaging or destroying the gutter-fabricating machine, and from using the LeafGuard trademarks. The Court will address the motion as it relates to the gutter-fabricating machine and the trademark rights in turn.

### a. Gutter-Fabricating Machine

In seeking to enjoin the use and transfer of the gutter-fabricating machine, the plaintiff asserts that the defendants continue to make use of the gutter machine despite the fact that the agreement between the parties has been terminated. However, as noted by the defendants, the plaintiff has not included any claims for patent infringement in this action. Absent the overlay of federal patent law, the sole basis for granting an injunction as it relates to the gutter-fabricating machine would be a contractual interpretation of the buy-back provision contained in the agreement between the parties. As noted by the South Carolina Supreme Court, a question of material fact exists as to whether this agreement was properly terminated. Any question as to the validity and termination of this agreement will be resolved in the immediate future at the trial of this case. Although the Court takes notice of evidence regarding the defendants' alleged use of the gutter-fabricating machine without the payment of royalties during the eight years that his case has been pending, the record does not reflect that a remedy at law would be inadequate to compensate the plaintiff for the claims that have been raised relating to the gutter-fabricating machine. Thus, at this time, the Court concludes the plaintiff has not established that it will be irreparably harmed absent an injunction, nor that such harm is "likely" between now and trial. See Winter, 129 S.Ct. at 374. Further, on June 17, 2002, this Court notes that the South Carolina Circuit Court denied Englert's initial motion for a preliminary injunction and determined that the defendants were entitled to possession of the gutter-fabricating machine pending a decision on the merits of the parties' contractual relationship. Englert,

Inc. v. LeafGuard USA, 619 S.E.2d 12, 13 (Ct. App. 2005). The record before this Court does not provide a basis for reconsideration of the Circuit Court's earlier ruling on this issue.

For these reasons, the plaintiff's motion for preliminary injunction as it relates to the gutter-fabricating machine is denied. If the plaintiff prevails at trial, upon request, the Court will revisit any relevant injunction issues at that time. The Court notes, further, that as the gutter-fabricating machine is material evidence in this case, the defendants are to preserve it in its current condition pending trial. The gutter-fabricating machine is not to be damaged, sold, transferred, or disposed of before trial commences in this case.

### b. LeafGuard Trademarks

Application of the preliminary injunction factors varies with regard to the trademark rights at issue in this case. As the Fourth Circuit has recognized, "irreparable injury regularly follows from trademark infringement." Lone Star Steakhouse & Saloon, Inc. v. Max Shyne Inc., 43 F.3d 922, 939 (4th Cir. 1995) (citing Wynn Oil Co. v. American Way Service Corp., 943 F.2d 595, 608 (6th Cir. 1991). Thus, when credible evidence of infringement is presented, courts may be justified in finding that a remedy at law will be inadequate to preserve the rights of the trademark registrant pending trial.

The plaintiff has provided evidence of potential trademark infringement by the defendants. This evidence includes photographs of vehicles which display the "LeafGuard USA" business name, as well as business cards indicating that the company sells "Leafguard gutters." (Doc. #31). The plaintiff has also provided affidavits indicating that the defendants have continued to use the LeafGuard trademarks in certain, unspecified respects. (Doc. #22). The defendants dispute the extent to which, if at all, they have continued to use the LeafGuard trademark. The defendants also

9

note that "LeafGuard USA," the name which appears on at least two of the defendants' trucks, was the trade name of the defendants' gutter installation company until recently. Whether or not the defendants were permitted to continue to operate one of their corporations under the name "LeafGuard USA," after it became apparent that neither company was performing under the licensing agreement, is an issue related to the proper termination of the agreement. As noted above, proper termination of the agreement is a key issue of material fact to be resolved at trial.

Notably, a trial in this matter will commence in the immediate future. Discovery in this matter has concluded, and the deadline for filing all dispositive motions has passed. The parties have requested that the Court reopen discovery for a short time period to allow the parties to examine a limited issue relating to the addition of an additional company operated by the defendants. During the hearing on this motion, the parties provided the Court with a proposed consent amended scheduling order. This matter will be addressed by separate Order of this Court. While the Court is inclined to extend the deadlines as requested by the parties, no further extensions will be granted in this case absent a showing of compelling circumstances. After over eight years of litigation in this matter, absent settlement, it is time for this case to proceed to trial.

A limited preliminary injunction preventing the use of the plaintiff's trademark would require the defendants to take affirmative action to change signage and business vehicles to remove any reference to LeafGuard USA, the former name for the defendants' gutter company. This Court has given careful consideration to certain compelling evidence requiring them to do so. However, at the upcoming trial, a jury will determine whether the agreement was properly terminated and whether the defendants have been justified in continuing to use the trade name LeafGuard USA. As no injunction has been entered in the eight years this case has been pending, the risk that the plaintiff

will suffer irreparable injury in the short interval pending trial weighs against granting an injunction at this time. While the plaintiff has presented evidence that supports a potential for success on the merits of its trademark infringement claims, the Court concludes that success on the merits will soon be decided by the jury after long delay. Further, the record before the Court does not indicate a showing of trademark infringement sufficient to allow the Court to conclude that irreparable injury to the plaintiff is likely between now and trial. See Lone Star Steakhouse & Saloon, Inc. v. Max Shyne Inc., 43 F.3d 922, 939 (4th Cir. 1995). Finally, although the public has a strong interest in the protection and enforcement of trademark rights, the Court has not concluded that the narrow issues involved in this case have public interest implications sufficient to justify the grant of an injunction in this case pending trial. For these reasons, the plaintiff's motion for preliminary injunction preventing the use of the LeafGuard trademarks by the defendants pending trial is denied at this time.

## CONCLUSION

For the reasons set forth herein, the defendants' motion for partial summary judgment is denied. (Doc. #12). The plaintiff's motion for preliminary injunction is denied at this time. (Doc. #22).

As noted above, the parties provided the Court with a proposed consent amended scheduling order during the November 23, 2009 hearing on these motions. A new Scheduling Order will be entered by separate Order of this Court. However, no further extensions will be granted in this matter absent compelling reasons.

**IT IS SO ORDERED**.

    s/ Terry L. Wooten
United States District Judge

December 14, 2009
Florence, South Carolina